UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RUVYM PERRO,

                Petitioner,

      v.

MARKWAYNE MULLIN et al.,

                Respondents.

CASE NO. 2:26-cv-00847-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Ruvym Perro's Petition for Writ of Habeas Corpus. Dkt. No. 1. Having reviewed the Petition, Respondents' Return[1] (Dkt. No. 6), and the relevant record,[2] the Court DENIES the Petition.

## I.    BACKGROUND

Petitioner Ruvym Perro is a 23-year-old citizen and national of Ukraine. Dkt. No. 1 ¶ 10.

---

[1] As used in this order, the term "Respondents" includes all Respondents except Respondent Scott. Respondent Scott has not responded to the habeas petition and has not appeared in this case.

[2] Petitioner did not file a Traverse.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 1

Respondents[3] are officials of the United States Department of Homeland Security ("DHS") and Department of Justice, as well as Bruce Scott,[4] "the Warden or Facility Administrator of the Northwest ICE Processing Center [('NWIPC')] in Tacoma, Washington, the facility where Petitioner is currently detained." *Id.* ¶¶ 27–31.

On or about April 4, 2022, Petitioner entered the United States without "valid documents permitting entry into the United States." *Id.* ¶¶ 2, 11; Dkt. No. 8-3 (Record of Deportable/Inadmissible Alien ("Form I-213")) at 2. Petitioner asserts that, upon his entry into the United States, he "sought protection from persecution, and was placed into full removal proceedings." Dkt. No. 1 ¶ 2; *see* Dkt. No. 8-3 at 2 ("[Petitioner] stated he has fear of persecution or torture if removed from the United States to Ukraine."). The same day Petitioner entered the United States, Customs and Border Protection ("CBP") "paroled [Petitioner] into the United States under [Immigration and Nationality Act ("INA") Section] 212(d)(5)(A) with an expiration date of April 03, 2024." Dkt. No. 8-3 at 3; *see* Dkt. No. 8-2 (I-94 record). Petitioner's I-94[5] notes his "Class of Admission" as "DT" (Dkt. No. 8-2), which "corresponds to humanitarian parole granted pursuant to 8 U.S.C. § 1182(d)(5)(A) . . . ." *Temirlan Amatbek Uulu v. Scott*, No. C26-774, 2026 WL 865813, at *1 (W.D. Wash. Mar. 30, 2026).

---

[3] As used in this order, the term "Respondents" includes all Respondents except Respondent Scott. Respondent Scott has not responded to the habeas petition and has not appeared in this case.

[4] Although the U.S. Attorney's Office states that it does not represent the NWIPC warden (*see* Dkt. No. 6 at 1 n.2), and the warden has not appeared or otherwise participated in this case, the Court finds that it is still appropriate to proceed and adjudicate the merits of the petition here, because: (1) the purpose of naming the custodian in a habeas petition is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) the federal government often represents the warden's interests, as it does in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[5] "An I-94 Form is an alien arrival-departure record that serves as proof of the bearer's current immigration status and the time period during which his stay in this country is authorized." *Mariscal-Sandoval v. Ashcroft*, 370 F.3d 851, 853 n.4 (9th Cir. 2004).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 2

Petitioner's Form I-213, which issued January 12, 2026, notes that, "[o]n December 24, 2023, [Petitioner] was arrested by the Portland [Oregon] Police Department for robbery and burglary." Dkt. No. 8-3 at 3. The I-213 notes that the criminal matter is "still pending," and that "[o]n October 06, 2025, [Petitioner] was arrested by the Multnomah County [Oregon] Sheriffs [*sic*] Office for failure to appear for the robbery and burglary charges." *Id.* "No dispositions were found." *Id.*

On January 12, 2026, Immigration and Customs Enforcement ("ICE") arrested Petitioner in Portland, Oregon, and, on a date not indicated in the record, transferred him to NWIPC. Dkt. No. 1 ¶ 13. Petitioner has been detained at NWIPC since then. *Id.* ¶ 15. On January 23, 2026, Petitioner appeared in Tacoma Immigration Court to request a change in his custody status. *Id.* ¶ 14. Petitioner's attorney withdrew the request, however, and the immigration judge ("IJ") took no action on the matter. *See* Dkt. No. 1-1 at 7 (Order of the IJ). On March 12, 2026, Petitioner filed the instant petition for a writ of habeas corpus.

## II.  LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III.  DISCUSSION

### A.  Basis for Detention

The Parties disagree as to which statute governs Petitioner's detention. Petitioner asserts that his detention is governed by Section 236(a) of the INA, 8 U.S.C. § 1226(a). *See* Dkt. No. 1

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 3

¶ 5. Respondents assert that "Petitioner's detention is authorized and required by 8 U.S.C. § 1225(b). Dkt. No. 6 at 3.

Very generally speaking, noncitizens subject to Section 1225(b) must be detained "throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018); *see Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1306 (W.D. Wash. 2025). Under Section 1226(a), by contrast, noncitizens in removal proceedings may be either detained or conditionally released at the discretion of the Secretary of Homeland Security. *See* 8 U.S.C. § 1226(a); *Rodriguez Vazquez*, 802 F. Supp. 3d at 1306.

Given the record before it, the Court agrees with Respondents. Beyond his unsubstantiated assertion that he "is subject to pre-final order of removal detention under 8 U.S.C. § 1226(a)," Petitioner has not presented the Court with any evidence to indicate that his detention is discretionary under Section 1226(a). Rather, the record indicates that Petitioner is detained under the authority of Section 1225(b)(1)(A), not Section 1226(a). Several factors inform the Court's conclusion.

First, Petitioner asserts that, upon his entry into the United States on April 4, 2022, he "was determined to be a citizen of Ukraine and did not possess valid documents permitting entry into the United States." Dkt. No. 1 ¶ 11. Petitioner's Form I-213 endorses this assertion, indicating that Petitioner is charged with violating 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an "immigrant without an immigrant visa." Dkt. No. 8-3 at 3. A noncitizen who, like Petitioner, is determined upon arrival to be "inadmissible under section . . . 1182(a)(7)," is subject to the statutory scheme described in Section 1225(b)(1). 8 U.S.C. § 1225(b)(1)(A)(i).

Second, Petitioner's Form I-213 specifically indicates that Petitioner was paroled into the United States under 8 U.S.C. § 1182(d)(5)(A). Dkt. No. 8-3 at 3 (stating Petitioner was paroled

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 4

"into the United States under 212(d)(5)(A)"). This provision of the INA provides for "parole into the United States . . . for urgent humanitarian reasons or significant public benefit . . . ." Were Petitioner's detention governed by Section 1226(a), as Petitioner argues, then his "parole" would have been granted under Section 1226(a)(1)(B), which allows for a noncitizen's release on "conditional parole." *Cf. Caisa Telenchana v. Hermosillo*, No. C26-363, 2026 WL 696806, at *8 (W.D. Wash. Mar. 12, 2026) (noting that "courts within this District consistently find that noncitizens subject to . . . modes of release [other than humanitarian parole] fall under the discretionary detention scheme in Section 1226(a)") (collecting cases).

Third, Petitioner did not file a Traverse, in which he might have rebutted Respondents' argument that his detention is governed by Section 1225(b).

Therefore, the Court concludes that Petitioner is detained under the authority of Section 1225(b)(1).

**B.      Petitioner's Bases for the Writ**

Petitioner presents six grounds for granting a writ of habeas corpus. The Court will discuss them in turn.

**1.      Unlawful Detention in Violation of the INA**

Petitioner argues that his "continued confinement . . . exceeds the narrow detention authority granted by Congress and violates controlling Supreme Court precedent." Dkt. No. 1 ¶¶ 55–56. The Court disagrees. Respondents categorize Petitioner as an "arriving alien," as that term is defined in 8 C.F.R. § 1.2, and as that term is applied in Section 1225(b)(A)(1).[6] Dkt. No. 6 at 5; *see* Dkt. No. 8-1 (Notice to Appear ("NTA")) at 2 ("You are an arriving alien."). In

---

[6] Respondents assert that Petitioner's classification is governed by 8 U.S.C. § 1225(b)(2)(A). *See* Dkt. No. 6 at 5. However, Section 1225(b)(2)(A) expressly does not apply to a noncitizen to whom, like Petitioner, Section 1225(b)(1) applies. *See* 8 U.S.C. § 1225(b)(2)(B). Ultimately and for Respondents' purpose in opposing the instant petition here, the error is inconsequential.

the most generous reading of the Petition, Petitioner *might* be asserting—although his Petition is neither clear nor explicit on this issue—that his parole under Section 1182(d)(5) placed him in some legal category other than an "arriving alien." *See* Dkt. No. 1 ¶ 4 n.1.[7] However, the statutory language of Section 1182(d)(5) renders this argument a nonstarter. Under 8 U.S.C. § 1182(d)(5)(A),

> [humanitarian] parole . . . shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

When Petitioner's parole expired on April 3, 2024, he was again considered an "arriving alien" under Section 1225(b)(1)(A). And under *Jennings*, Section 1225(b)(1)(A) makes Petitioner's detention mandatory. *Jennings*, 583 U.S. at 302.

Therefore, this basis for relief fails.

### 2. Violation of the Due Process Clause of the Fifth Amendment

Petitioner asserts that his "continued incarceration without an individualized custody determination violates the Due Process Clause of the Fifth Amendment." Dkt. No. 1 ¶ 68. As discussed above, as a noncitizen detained pursuant to 8 U.S.C. § 1225(b), Petitioner's detention is mandatory. Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing

---

[7] In footnote 1 of his Petition, Petitioner provides a lengthy discussion of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), an administrative adjudication upon which, he asserts, Respondents "rel[y]." *See* Dkt. No. 1 ¶ 4 n.1. Petitioner criticizes *Yajure Hurtado* as "effectively rewrit[ing] binding Attorney General custody regulations—without rulemaking—by converting a narrow, regulation-based 'arriving alien' bond bar into a sweeping prohibition for virtually all noncitizens charged as present without admission." *Id.* But it is unclear why Petitioner has included this digression into *Yajure Hurtado*. For one thing, Respondents do not rely on this administrative adjudication in opposing the instant Petition. In fact, they do not cite or discuss the case at all in their Return. For another, irrespective of whether or not *Yajure Hurtado* represents an erroneous interpretation and/or application of the INA, Petitioner does not show how that case implicates the instant Petition. That is to say, although Petitioner asserts that *Yajure Hurtado* is wrong, he does not explain why that matters here.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 6

the constitutionality of prolonged mandatory detention for noncitizens detained pursuant to 8 U.S.C. § 1225. *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019). However, "nearly all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Maliwat v. Scott*, No. C25-788, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (citation modified) (quoting *Banda*, 385 F. Supp. 3d at 1116); *see also Toktosunov v. Wamsley*, No. C25-1724, 2025 WL 3492858, at *3 (W.D. Wash. Dec. 5, 2025) (collecting cases).

In assessing the constitutionality of prolonged mandatory detention, the court in *Banda* declined to apply the test established in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), because balancing the *Mathews* factors does "not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided" and was "not particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case." *Banda*, 385 F. Supp. 3d at 1106–07 (citation modified). Rather, the Court in *Banda* conducted a case-specific analysis considering the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id*. at 1117 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)). Courts in this District have now adopted the "*Banda* test" to assess when detention without a bond hearing under 8 U.S.C. § 1225(b) has become unjustifiably prolonged and thus violative of due process. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *3–4; *Belqasim v. Bostock*, No. C25-1282, 2025 WL 3466971 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted sub nom.*

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 7

*Belqasim v. Hermosillo*, 2025 WL 3170929 (Nov. 13, 2025); *Hong v. Mayorkas*, No. C20-01784, 2022 WL 1078627, at *4–5 (W.D. Wash. Apr. 11, 2022).

Here, Petitioner does not discuss the *Banda* test, and Respondents' application of it is perfunctory. *See* Dkt. No. 6 at 6–7. In line with prevailing practice in this District, the Court considers the *Banda* test in determining whether Petitioner's detention without a bond hearing violates the Constitution.

The first and "most important factor" considers the total length of Petitioner's detention to date. *See Banda*, 385 F. Supp. 3d at 1118. "The longer mandatory detention continues . . . the harder it is to justify." *Murillo-Chavez v. Garland*, No. C22-303, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (Oct. 31, 2022). Here, Petitioner has been detained for almost three months. *See* Dkt. No. 1 ¶ 62. Simply put, this is not enough. There is no brightline temporal threshold where mandatory detention under Section 1225(b) becomes unreasonable, but no court in this District has ever found a three-month detention unreasonably prolonged. *See, e.g.*, *Duvine v. Hermosillo*, No. C25-2583, 2026 WL 183374, at *3 (W.D. Wash. Jan. 9, 2026) (finding that detention of more than seven months "has not yet reached the length of what this Court typically finds unreasonable"); *Bojorge-Sequeira v. Geo Grp. Inc.*, No. C25-1807, 2026 WL 288378, at *5 (W.D. Wash. Jan. 15, 2026), *report and recommendation adopted* 2026 WL 285657 (Feb. 3, 2026) (finding "approximately five months" of detention "has not yet reached the length of time many courts have found to be unreasonable"); *Nguyen v. Scott*, No. C25-1988, 2026 WL 194232, at *3 (W.D. Wash. Jan. 26, 2026) (finding 14 months of detention "falls squarely within the range of what this Court typically finds unreasonable").

As to the remaining five factors, Petitioner does not present any argument regarding the likely duration of future detention; the conditions of detention; delays in the removal proceedings

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 8

caused by Petitioner; delays in the removal proceedings caused by Respondents; or the likelihood that the removal proceedings will result in a final order of removal. *See Banda*, 358 F. Supp. 3d at 1117. Because the most important factor weighs so clearly in Respondents' favor, and because Petitioner has not made an argument, let alone a showing, as to the other five, the Petition does not, as pleaded, indicate a due-process violation arising from the length of Petitioner's detention under Section 1225(b).

Therefore, this basis for relief fails.

### 3.    Violation of the Administrative Procedure Act

Petitioner asserts that DHS "has acted arbitrarily and capriciously in continuing to detain Petitioner without any individualized justification." Dkt. No. 1 ¶ 71. In response, Respondents assert that "Immigration and Customs Enforcement officers followed the statutory command by detaining Petitioner as an arriving alien upon parole expiration. This is not an exercise of agency discretion or policy-making; it is the direct application of a mandatory statutory directive." Dkt. No. 6 at 8.

This basis for relief is substantially similar to Petitioner's first basis for relief. In both, Petitioner asserts that Petitioner's continued confinement fails to satisfy the statutory purpose of the INA. *See* Dkt. No. 1 ¶¶ 55, 76. As explained above, however, *see supra* Section III.B.1, Petitioner has not specifically identified a misapplication of the statute. Petitioner's presumption that Section 1225(b)—and, by corollary, *Jennings*—does not apply to him is not supported by the record or substantiated by argument.

Therefore, this basis for relief fails.

### 4.    Violation of the Equal Protection Guarantee of the Fifth Amendment

Petitioner asserts that Respondents' treatment of him "creates an unjustifiable disparity between [him] and similarly situated detainees who receive individualized bond hearings." Dkt.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 9

No. 1 ¶ 85. The problem with Petitioner's argument is that he does not identify any "similarly situated detainees," nor does he explain what "similarly situated" means in this context. Under prevailing precedent, however, the complained-of disparity is, as a matter of law, justified. *See Mathews v. Diaz*, 426 U.S. 67, 82–83 (1976) (holding that statutory distinctions among noncitizens based on the "character and the duration of [noncitizens'] residence" are "unquestionably reasonable"). That noncitizens are treated differently under Sections 1225 and 1226 is not Constitutionally problematic.

Therefore, this basis for relief fails.

### 5.    Violation of the Suspension Clause of the United States Constitution

The Suspension Clause provides that "[t]he privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it." U.S. Const. art. I, § 9, cl. 2.

Petitioner presumes, without adequate explanation or authority, that the Suspension Clause requires an "*administrative* pathway to challenge the legality, length, or necessity of . . . detention." Dkt. No. 1 ¶ 96 (emphasis added). Petitioner, however, has not pointed to any authority to justify such a presumption, and in the next paragraph of the Petition, Petitioner asserts that "no alternative remedy exists outside of habeas corpus through which Petitioner may obtain judicial review of the legality of his confinement." *Id.* ¶ 97. This assertion is fatal to the claim. The Suspension Clause does not guarantee an "alternative remedy . . . outside of habeas corpus"; it merely guarantees the availability of the writ of habeas corpus itself. The Court agrees with Respondents that the "Clause is satisfied so long as a meaningful avenue for habeas review remains open." Dkt. No. 6 at 8. Such an avenue—as codified at 28 U.S.C. § 2241 and as sought in the instant Petition—clearly demonstrates that Respondents' conduct here has not manifested a suspension of the writ of habeas corpus.

Therefore, this basis for relief fails.

### 6.      Violation of the *Accardi* Doctrine

Under the *Accardi* Doctrine, "an administrative agency is required to adhere to its own internal operating procedures." *Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990); *see United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954). Petitioner alleges that, when arresting Petitioner, ICE failed to abide by 8 C.F.R. § 287.8(c)(2)(i) and (ii). Dkt. No. 1 ¶ 103.

Under these regulations,

> (i) An arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States[; and]
>
> (ii) A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.

Respondents assert that they "fully complied with all applicable regulations." Dkt. No. 6 at 9. As to the first provision, Petitioner has admitted that, upon his entry into the United States, he "did not possess valid documents permitting entry into the United States." Dkt. No. 1 ¶ 11. Petitioner presents no argument or evidence to indicate that, subsequent to this original determination, Petitioner obtained such documentation or permission. Because Petitioner's parole lapsed on April 3, 2024, Petitioner was, pursuant to the INA, an "arriving alien" when he was arrested on January 12, 2026. *See* 8 U.S.C. § 1182(d)(5)(A).

As to the second, Respondents assert that "Petitioner, as an arriving alien, was detained pursuant to a Form I-200 Warrant of Arrest issued by an authorized immigration officer." Dkt. No. 6 at 9.; *see* Dkt. No. 8-4 (Warrant for Arrest of Alien) at 2. Petitioner *suggests* that the administrative warrant does not comply with the regulatory requirement that a warrant be

obtained. *See* Dkt. No. 1 ¶ 104. But the only support provided by Petitioner is that he "was not arrested pursuant to a *judicial* warrant . . . ." *Id.* (emphasis added). This is not, however, the law. "[C]onsistent with the Fourth Amendment, immigration authorities may arrest individuals for civil immigration removal purposes pursuant to an administrative arrest warrant issued by an executive official, rather than by a judge." *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 825 (9th Cir. 2020) (citing *Abel v. United States*, 362 U.S. 217, 230–34 (1960)). Further, Petitioner does not challenge the validity of the administrative warrant, which the Court notes contains neither Petitioner's name nor any basis for his arrest. But the Court cannot assume the role of advocate and make these arguments on Petitioner's behalf. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").

Therefore, this basis for relief fails.

### IV.   CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is DENIED.

Dated this 13th day of April, 2026.

Tana Lin
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 12